FILED
2023 Mar-27  PM 01:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GARY GIBBONS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:20-cv-02057-MHH** |
| **DEKALB COUNTY SHERIFF,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this § 1983 action, plaintiff Gary Gibbons alleges that the DeKalb County Sheriff and the City of Rainsville deprived him of his constitutional rights by conspiring to arrest and imprison him falsely, maliciously prosecute him, and abuse the legal process.  (Docs. 1, 26).[1]  The Sheriff has asked the Court to dismiss the claims against his office.  He argues that Mr. Gibbons has not properly pleaded a conspiracy, that his office is immune from suit under the Eleventh Amendment, and that the statute of limitations bars Mr. Gibbons's claims.  (Doc. 27).  The City of Rainsville also has asked the Court to dismiss the claims against it.  Like the Sheriff, the City argues that the statute of limitations bars Mr. Gibbons's claims and that the

---

[1] 42 U.S.C. § 1983 is the vehicle through which individuals may assert claims against state and municipal officials for alleged violations of the United States Constitution and federal laws.

City cannot be liable to Mr. Gibbons for the acts of a municipal police officer. (Docs. 28, 29).

This opinion resolves the defendants' motions to dismiss. The Court first discusses the standards that a district court must use to evaluate motions to dismiss claims that a *pro se* plaintiff asserts. Then, applying those standards, the Court describes Mr. Gibbons's factual allegations and the facts contained in the records from Mr. Gibbons's state court criminal cases, presenting the allegations and the information in the state court records in the light most favorable to Mr. Gibbons. Finally, using Mr. Gibbons's factual allegations and the information available in the state court records, the Court evaluates the defendants' arguments for dismissal.

## I.

Rule 12(b)(1) of the Federal Rules of Civil Procedure enables a defendant to move to dismiss an action over which a federal court does not have jurisdiction. FED. R. CIV. P. 12(b)(1). Unlike state courts, "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal district court "is powerless to act beyond its statutory grant of subject matter jurisdiction[.]" *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists." *Thomas v. U.S. Postal Serv.*, 364 Fed.

Appx. 600, 601 n.3 (11th Cir. 2010).

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A district court must liberally construe *pro se* documents such as complaints. *Erickson*, 551 U.S. at 94.  "'[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice.").  Still, a district court "may not serve as de facto counsel for a party, or . . . rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex. rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted).  When a *pro se* plaintiff has filed an original complaint and an amended

complaint, the Court reads the documents together to identify the factual allegations on which the plaintiff's claims rest. *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). Therefore, the Court describes the factual allegations in Mr. Gibbons's complaint, amended complaint, and the documents attached to them in the light most favorable to Mr. Gibbons.[2]

Rule 201(b) of the Federal Rules of Evidence authorizes a court to take judicial notice of facts that are not "subject to reasonable dispute" because the facts are capable of accurate and ready determination by resort to "sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). "Public records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) (holding that, in resolving a motion to dismiss, Florida district court could take

---

[2] Ordinarily, when deciding a motion to dismiss under Rule 12(b)(6), to consider information outside of a complaint, a district court must convert a motion to dismiss into a motion for summary judgment and offer the plaintiff an opportunity to present evidence to challenge the motion. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). A district court may consider a document outside of a complaint without converting a motion to dismiss into a motion for summary judgment if the document "is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

judicial notice of a complaint filed in federal district court in New York without converting the motion to dismiss into a motion for summary judgment). A district court may take judicial notice of state court records to "recogniz[e] the 'judicial act' that the order represents or the subject matter of the litigation." *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

## II.

On June 25, 2014, Mr. Gibbons was arrested during a traffic stop. (Doc. 26, p. 2, ¶ 6; *see also* Doc. 1, p. 12). Police had been watching the house that Mr. Gibbons was renting because Mr. Gibbons's roommate was dealing methamphetamine. (Doc. 1, pp. 14, 19). The traffic stop occurred near a license checkpoint in Rainsville, Alabama being conducted by two officers of the City of Rainsville Police Department and an Alabama State Trooper. (Doc. 1, p. 12; Doc. 11-1, p. 6). The officers arrested the passenger in Mr. Gibbons's vehicle because the passenger had an outstanding arrest warrant. The officers arrested Mr. Gibbons because a search of his car revealed an unlabeled prescription bottle containing 37 oxycodone pills. (Doc. 1, p. 12). The officers towed Mr. Gibbons's car and brought him and the passenger in his car to the Rainsville Police Department for booking. (Doc. 1, p. 12).

The following day, Investigator Steve Dutton, an officer in the City of

Rainsville Police Department, mirandized Mr. Gibbons and interviewed him.[3]
Officer Bowen weighed the pills found in Mr. Gibbons's vehicle.  Because of the
weight of the drugs, Mr. Gibbons was charged with drug trafficking instead of
possession.  (Doc. 1, p. 12).  According to Mr. Gibbons, Officer Dutton had "no
knowledge of the events leading to the initial arrest," but he "took over the case and
signed a perjured complaint stating that [Mr. Gibbons] had trafficked in
methamphetamine."  (Doc. 26, p. 2, ¶ 4).  In fact, on June 26, 2014, Officer Dutton
signed a complaint that states that "on or about" June 25, 2014, in Rainsville,
Alabama in DeKalb County, Alabama, Mr. Gibbons knowingly sold or possessed
28 grams or more of oxycodone in violation of Ala. Code § 13A-12-231(11).  (Doc.
11-1, p. 7).  Section 13A-12-231(11) concerns trafficking of methamphetamine.
Ala. Code § 13A-12-231(11); (Doc. 11-1, p. 7; Doc. 13-1, p. 19).  On June 26, 2014,
Officer Dutton also signed a warrant that commanded Mr. Gibbons's arrest for the
felony of trafficking methamphetamine.  (Doc. 11-1, p. 5; *see also* Doc. 26, p. 2,
¶ 4).  The state court docketed Mr. Gibbons's arrest as Case No. DC-2014-1409 and
indicated that Mr. Gibbons was charged with trafficking methamphetamine "even
though no methamphetamine was claimed to have been found by the original
arresting officers, and the police report made no mention of methamphetamine."

---

[3] According to the arrest report for Mr. Gibbons's arrest, Officer Bowen was the arresting officer;
and Officer Dutton was the watch commander.  (Doc. 11-1, p. 6).

(Doc. 26, p. 2, ¶ 4; Doc. 29-4, p. 1; *see also* Doc. 1, p. 12).

Mr. Gibbons alleges that his bail initially was set at $2,800, but when Officer Dutton became involved, his bond was reset to $58,000. (Doc. 1, p. 15; *see also* Doc. 33, p. 2). Mr. Gibbons was released from custody in Case No. DC-2014-1409 on June 28, 2014 pursuant to an appearance bond and a pretrial release program. (Doc. 11-1, pp. 2, 4; Doc. 26, p. 2, ¶ 4; Doc. 29-2, p. 1).[4]

On July 23, 2014, the City of Rainsville Police Department sent the drugs taken during Mr. Gibbons's arrest to the Department of Forensic Sciences for testing.[5] The Department did not test the drugs until March of 2018. (Doc. 13-1, p. 19). Meanwhile, in October 2014, a preliminary hearing was held regarding Mr. Gibbons's arrest, and probable cause was not found for the arrest. (Doc. 29-1, p. 1). On February 2, 2015, Mr. Gibbons was released from his bond obligation and from pretrial drug testing. (Doc. 29-3, p. 1). Mr. Gibbons alleges that Case No. DC-2014-1409 terminated in his favor on November 23, 2015. (Doc. 26, p. 2, ¶¶ 4, 6). The docket sheet for the case indicates that the matter terminated when Mr. Gibbons was indicted for drug trafficking in 2018. (Doc. 29-4, p. 2).

---

[4] Mr. Gibbons was charged in Case DC-2014-1410 with the misdemeanor offense of alcohol possession. (Doc. 1, p. 12; Doc. 29-2, p. 1; Appendix A to this opinion). The Court takes judicial notice of state court records from Mr. Gibbons's state criminal proceedings that are not attached to filings in this case and attaches those records as appendices to this opinion. *See* pp. 4-5 above.

[5] The Alabama Department of Forensic Sciences is a state agency that has labs throughout Alabama. ADFS, https://www.adfs.alabama.gov/labs/labs-headquarters (last visited Mar. 23, 2023).

According to a state court order, on June 18, 2018, the Department of Forensic Sciences issued a report in which the department indicated that on March 27 and 28, 2018, it tested the drugs taken during Mr. Gibbons's June 2014 arrest. (Doc. 13-1, p. 19). After the Department of Forensic Sciences issued its report to the DeKalb County District Attorney's Office, the District Attorney sought a state grand jury indictment for Mr. Gibbons for drug trafficking. (Doc. 11-2, p. 2; Doc. 13-1, p. 19). Mr. Gibbons asserts that Officer Dutton was involved in bringing a "bogus charge" for trafficking hydrocodone before a grand jury. (Doc. 33, p. 2). In August 2018, a DeKalb County Grand Jury indicted Mr. Gibbons for selling or knowingly possessing between four and 28 grams of oxycodone in violation of Ala. Code § 13A-12-231(3). The case was assigned Case No. CC-2018-565. (Doc. 11-2, p. 3; Doc. 13-1, p. 19; Doc. 29-5, p. 1; Appendix B to this opinion). The state court docket sheet for Case No. CC-2018-565 states that Mr. Gibbons was charged with trafficking methamphetamine. (Appendix B).

According to a state court order, the state court clerk set Case No. CC-2018-565 for arraignment, and listed Mr. Gibbons's original attorney as the attorney for the arraignment. The state court docket sheet for Case No. CC-2018-565 confirms that Mr. Gibbons's attorney from Case No. DC-2014-1409 was listed as his original attorney in Case No. CC-2018-565. (Doc. 29-4, p. 1, 8/5/2014 dkt. entry; Appendix B, 10/10/2018 dkt. entry). The state court order indicates that Mr. Gibbons's

8

attorney was not in private practice in 2018, and nothing in the record indicates that Mr. Gibbons received notice of the arraignment. Mr. Gibbons did not appear for the arraignment. (Doc. 13-1, p. 19; Doc. 25-9, p. 1). On November 19, 2018, the state court judge issued a warrant for Mr. Gibbons's arrest. (Doc. 29-5, p. 1; *see also* Doc. 13-1, p. 19). Mr. Gibbons was arrested "2 days before Christmas," and Case 2018-565 was set for trial on February 25, 2019, nearly five years after Mr. Gibbons's initial arrest. (Doc. 1, p. 16; Doc. 13-1, pp. 19-20). Mr. Gibbons alleges, and the City of Rainsville acknowledges, that Officer Dutton was present when Mr. Gibbons was arrested in Jackson County in December 2018. (Doc. 26, p. 2, ¶ 7; Doc. 29, p. 7). For a second time, Mr. Gibbons had to secure a $58,000 bond for his release from custody. (Doc. 1, p. 18; Doc. 33, p. 1).

By order dated February 26, 2019, the state circuit court judge dismissed the charge against Mr. Gibbons in Case 2018-565 with prejudice. (Doc. 13-1, p. 24). The state court held that Mr. Gibbons was "prejudiced given that the fault of the delay is entirely the responsibility of the State and given the great length of the delay for this case." (Doc. 13-1, p. 24).

Mr. Gibbons filed his § 1983 complaint in this action on December 22, 2020. (Doc. 1). The Court issued an order in which it identified several flaws in the complaint. (Doc. 14). The Court offered Mr. Gibbons an opportunity to amend his

complaint, and Mr. Gibbons filed his amended complaint in August of 2022.  (Docs. 14, 26).

Mr. Gibbons alleges that he was "twice falsely arrested and imprisoned." (Doc. 26, p. 1, ¶ 1).  He contends that each time he was arrested, the officers involved knew that he had not committed the alleged crime and that the City of Rainsville knew that the arrests were illegal but allowed them anyway.  (Doc. 26, p. 1, ¶ 1).  Mr. Gibbons asserts that Officer Dutton had a personal vendetta against him and that the City hired Officer Dutton without properly investigating his background.  (Doc. 26, pp. 1-2, ¶ 3; Doc. 33, p. 1).  According to Mr. Gibbons, if the City had properly investigated Officer Dutton's background before hiring him, the City would have learned that Officer Dutton "had been previously fired by numerous governing bodies due to wide spread [*sic*] misconduct including wide spread [*sic*] violations of the position to improperly punish persons he disliked."  (Doc. 26, pp. 1-2, ¶ 3).  Mr. Gibbons alleges that Officer Dutton "conspired with [t]he Sheriff of DeKalb County, Alabama, [t]he City of Rainsville, Alabama and others unknown, and they all with each other, said conspiracy extending to all arrests and imprisonments."  (Doc. 26, p. 3, ¶ 9).  Mr. Gibbons asserts that as a consequence of the defendants' conduct, he has suffered business losses, mental anguish, and physical illness, and he seeks compensatory and punitive damages.  (Doc. 26, p. 3, ¶ 10).

## III.

<u>Sovereign Immunity</u>

The Sheriff argues that his office is immune from suit under 42 U.S.C. § 1983. (Doc. 27-1, pp. 3-4).  As the Court discussed in an earlier order in this case, sovereign immunity greatly restricts a plaintiff's ability to sue a state official in federal court. (Doc. 14, pp. 9-10).   Indeed, the Eleventh Amendment to the United States Constitution "enshrouds states with a shield of sovereign immunity against suits in federal court."  *Haven v. Board of Trustees of Three Rivers Regional Library Sys.*, 69 F. Supp. 3d 1359, 1363 (S.D. Ga. 2014); *see* U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").[6]

Under the Eleventh Amendment, "each State is a sovereign entity in our federal system" and is not "amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (internal quotations omitted) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)).[7]  The State of Alabama has not

---

[6] In the late nineteenth century, the Supreme Court held that the Eleventh Amendment protects states against suit from their own citizens as well as citizens of other states.  *Hans v. Louisiana*, 134 U.S. 1 (1890).  That holding has not been disturbed since.

[7] Beyond consent, a state may be subject to suit in federal court when Congress enacts a statute that clearly "abrogates the States' sovereign immunity."  *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).  Congress may abrogate sovereign immunity when Congress "makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant

consented to suit in federal court.  *See* ALA. CONST. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity.").  Under the Alabama Constitution, a county sheriff is a state executive officer.  ALA. CONST. art. V, § 112 ("The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county.").  As the Eleventh Circuit has stated, "Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment."  *Melton v. Abston*, 841 F. 3d 1207, 1234 (11th Cir. 2016).

Consequently, the Court lacks jurisdiction over Mr. Gibbons's claim for damages against the Sheriff of DeKalb County.  The Court will dismiss Mr. Gibbons's claims against the Sheriff's office pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[8]

---

to a valid exercise of its power under § 5 of the Fourteenth Amendment."  *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003).  "Congress has not abrogated Alabama's immunity and Alabama has not waived its Eleventh Amendment immunity."  *Melton v. Abston*, 841 F. 3d 1207, 1234 (11th Cir. 2016).

[8] Unlike official capacity suits, an Alabama sheriff is not immune from suit in his or her individual capacity.  *Lockhart v. Franklin*, 777 Fed. Appx. 387, 391 (11th Cir. 2019) (citing *Melton*, 841 F.3d at 1234).  In his initial and amended complaints, Mr. Gibbons has not named a specific sheriff as a defendant, so the Court understands that Mr. Gibbons is asserting a claim against the current DeKalb County Sheriff in his official capacity.

Statute of Limitations

As the Court explained in its previous order in this case, statutes of limitations limit the time within which a party may file a civil claim against a defendant.  Mr. Gibbons asserts a claim against the City of Rainsville under 42 U.S.C. § 1983. Section 1983 does not have its own limitation period, so federal courts apply the forum state's statute of limitations for personal injury actions.  *See Owens v. Okure*, 488 U.S. 235, 236, 249–50 (1989).   In Alabama, the statute of limitations for personal injury claims is two years.  Ala. Code § 6-2-38(l);[9] *see also Files v. Kilgore*, 2018 WL 1598951, \*4 (N.D. Ala. Jan. 29, 2018) (citing *Wallace v. Kato*, 549 U.S. 384, 390 (2007)) (noting that false arrest and false imprisonment claims must be brought within two years in Alabama).   Therefore, Mr. Gibbons's claims for false arrest and imprisonment, malicious prosecution, and abuse of process are subject to a two-year statute of limitations.  "The statute of limitations on a section 1983 claim begins to run when 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"  *Van Poyck v. McCollum*, 646 F.3d 865, 867 (11th Cir. 2011) (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)).

Mr. Gibbons filed this lawsuit on December 22, 2020.  (Doc. 1).   He alleges

---

[9] Alabama Code § 6–2–38(l) states:  "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

that he was "twice falsely arrested and imprisoned" and became subject to "maliciously instituted criminal charges . . . in violation of the Fourth (seizure) and Fourteenth Amendments (liberty and due process) to the Constitution of the United State without probable cause to believe a crime had been committed and that [Mr. Gibbons] committed it or caused such arrest and imprisonment." (Doc. 26, p. 1, ¶ 1; *see also* Doc. 26, p. 3, ¶ 10). Mr. Gibbons asserts claims for false arrest, false imprisonment, abuse of process, and malicious prosecution. (Doc. 26, p. 3, ¶ 10).

With respect to Mr. Gibbons's claims for false arrest and false imprisonment, the first of the two arrests occurred in June of 2014. In his amended complaint, Mr. Gibbons asserts that in 2014, Officer Dutton conspired with others to get a warrant for Mr. Gibbons's arrest for trafficking methamphetamine "even though no methamphetamine was claimed to have been found by the original arresting officers, and the police report made no mention of methamphetamine." (Doc. 26, p. 2, ¶ 4). A state court document that Mr. Gibbons filed with his original complaint indicates that he signed a "Conditions of Release" form on June 28, 2014. (Doc. 1, p. 8). The form identifies the crime with which Mr. Gibbons was charged as "Trafficking – Meth." (Doc. 1, p. 8). In his initial complaint, Mr. Gibbons stated that when he signed the paperwork for his bond in 2014, he noticed that he was charged with trafficking methamphetamine rather than possession of the pills in his medicine bottle. (Doc. 1, p. 15). At the very latest, the facts which would support a cause of

action for false arrest and false imprisonment were or should have been apparent to Mr. Gibbons in October 2014 when, at the conclusion of a preliminary hearing regarding Mr. Gibbons's arrest, the state court determined that "probable cause [was] not found" for the arrest.  (Doc. 29-1, p. 1).  Given Mr. Gibbons's allegations and the information in the state court records that he and the City's attorney placed in the record, the two-year statute of limitations on Mr. Gibbons's false arrest and imprisonment claims regarding his 2014 arrest expired well before he filed his initial complaint in this action in December 2020.  Therefore, the Court must dismiss Mr. Gibbons's false arrest and false imprisonment claims against the City of Rainsville regarding the 2014 arrest.

The statute of limitations does not bar Mr. Gibbons's false arrest and false imprisonment claims concerning his second arrest in 2018.  Mr. Gibbons alleges correctly that he was indicted for trafficking pain pills in August 2018.  (Doc. 26, p. 2, ¶ 7; Doc. 11-2, p. 3).  In his original complaint, Mr. Gibbons alleged that he was arrested on that charge "2 days before Christmas," meaning December 23, 2018. (Doc. 1, p. 16).  On this record, Mr. Gibbons's December 22, 2020 § 1983 claims against the City of Rainsville regarding his 2018 arrest are timely.

The statute of limitations bars Mr. Gibbons's malicious prosecution claim concerning his 2014 arrest.  Under Alabama law, to establish a claim for malicious prosecution, a plaintiff must show "(1) that a prior judicial proceeding was instituted

by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding." *Hunter v. Mooring Tax Asset Group, LLC*, 53 So. 3d 879, 883 (Ala. 2009). The statute of limitations for a malicious prosecution claim does not begin to run "until the time for filing a notice of appeal in the underlying case has expired." *Barrett Mobile Home Transport, Inc. v. McGugin*, 530 So. 2d 730, 733 (Ala. 1988). Mr. Gibbons alleges that the City of Rainsville and Officer Dutton conspired with the DeKalb County Sheriff in the malicious prosecution of drug trafficking charges against him. (Doc. 26, pp. 1, 3).

Although a state court order indicates that a finding of no probable cause was issued in October 2014 for Case Co. 2014-1409, (Doc. 29-1, p. 1), it does not appear that the case was resolved until August 22, 2018, (Doc. 29-4, p. 2). The time for filing a notice of appeal expired 14 days later. Ala. Code § 12–12–70(b). Therefore, Mr. Gibbons's December 2020 malicious prosecution claim concerning the 2014 trafficking charge is untimely.[10]

The malicious prosecution claim regarding the 2018 trafficking charge against

---

[10] To the extent that Mr. Gibbons attempts to assert an abuse of process claim that is separate from his malicious prosecution claim, the only facts that potentially may support a separate claim concern Mr. Gibbons's allegation that Officer Dutton interfered in the setting of his bond in 2014 and caused the bond amount to increase from $2,800 to $58,000. A claim for that conduct in 2014 expired before Mr. Gibbons filed this lawsuit in 2020.

Mr. Gibbons was resolved in 2019, so Mr. Gibbons's December 2020 claim regarding the prosecution is not untimely.  With respect to that prosecution, Mr. Gibbons contends that "Officer Dutton somehow managed to, once again, have a bogus charge to bring in front of a Grand Jury to get me indicted." (Doc. 33, p. 2).

<u>Municipal Immunity</u>

The City of Rainsville contends that Mr. Gibbons cannot hold it liable under § 1983 because of its status as a municipality.  (Doc. 29, pp. 13-23).  The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," but § 1983 provides an avenue for relief where "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  In other words, a municipality can be liable under § 1983 only directly for its own actions and cannot be liable on a vicarious liability or *respondeat superior* theory for the conduct of a city employee. *Baxter v. Roberts*, 54 F. 4th 1241, 1270 (11th Cir. 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  "A plaintiff can establish the existence of a municipal policy . . . by (1) pointing to an official policy; (2) identifying 'a widespread practice that, although not authorized by written or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'; or (3) demonstrating that the municipality 'tacitly authorized' or 'displayed deliberate indifference towards' the 'constitutionally

17

offensive actions of its employees.'" *Baxter*, 54 F. 4th at 1270 (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001)) (alterations adopted).

Mr. Gibbons alleges that the City knew that the 2014 arrests were illegal but permitted them anyway. (Doc. 26, p. 1, ¶ 1). He contends that after his 2014 arrest, on "numerous occasions," he notified the City of the "illegal actions of Steve Dutton," but the City "refused to rectify the situation. The City accepted the prior actions of its officer[,] acknowledging its own policy." (Doc. 26, p. 2, ¶ 5). Mr. Gibbons alleges that Officer Dutton was involved in his 2018 arrest and that he again notified the City that the arrest was illegal, "but the city failed to take any action to remedy the illegal action." (Doc. 26, p. 2, ¶ 7; *see* Doc. 33, p. 2 (stating that the City "helped Dutton pursue this [2018] case and indicted me")). Finally, Mr. Gibbons alleges that the City hired Officer Dutton even though Officer Dutton had been fired "by numerous governing bodies due to wide spread [*sic*] misconduct including wide spread [*sic*] violations of the position to improperly punish persons he disliked." (Doc. 26, pp. 1-2, ¶ 3). Mr. Gibbons asserts that the City "failed to properly investigate" Officer Dutton's background before hiring him. (Doc. 26, pp. 1-2, ¶ 3).

The Eleventh Circuit has stated that "[t]he continued failure of [a] city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under 1983." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). Taken as true for purposes of

this opinion, Mr. Gibbons's allegations that he notified the City on numerous occasions that his arrests were illegal and that the City failed to intervene to stop the unlawful arrests and prosecutions suffices to establish, at this early stage of the litigation, that the City tacitly authorized or displayed deliberate indifference towards the constitutionally offensive actions of its employee, Officer Dutton. This ruling does not preclude the City from raising a *Monell* argument at a later stage of this litigation based on an evidentiary record.

## IV.

Accordingly, the Court grants the Sheriff's motion to dismiss and dismisses Mr. Gibbons's claims against the Sheriff pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The Court grants the City's motion to dismiss Mr. Gibbons's claims regarding the 2014 arrest pursuant to Rule 12(b)(6) because Mr. Gibbons's claims regarding the 2014 arrest are time-barred. The Court denies the City's motion to dismiss Mr. Gibbons's claims regarding the 2018 indictment and arrest.

The Clerk of Court shall please TERM Docs. 27, 28, and 29

**DONE** and **ORDERED** this March 27, 2023.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE