FILED

2025 Sep-30  PM 04:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GARY GIBBONS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:20-cv-02057-MHH** |
| | } | |
| **CITY OF RAINSVILLE,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Gary Gibbons has sued the City of Rainsville, Alabama for alleged violations of his constitutional rights. (Doc. 1; Doc. 26).[1]  The City has filed a motion for summary judgment. (Doc. 42).  To address the City's motion, the Court first summarizes the procedural standard that governs summary judgment motions.  Then, consistent with that standard, the Court analyzes the facts in the record under the applicable law to resolve the City's motion.

## I.

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment.  A district court "shall grant summary judgment if the movant shows that

---

[1] Mr. Gibbons also sued the DeKalb County Sheriff. (Doc. 26).  On March 27, 2023, the Court dismissed Mr. Gibbons's claims against the Sheriff for lack of subject matter jurisdiction. (Doc. 36, pp. 11–12).  Because the Clerk of Court has terminated the DeKalb County Sheriff as a defendant in this action, the Clerk shall please update the case caption on the docket sheet to read "Gibbons v. City of Rainsville."

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment, in this case, Mr. Gibbons must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty*

2

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Still, conclusory statements in a declaration cannot by themselves create a genuine issue of material fact.  *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

When reviewing *pro se* filings, a district court must be mindful that filings written by *pro se* litigants are held to a less stringent standard than filings drafted by attorneys.  *See Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022).  Though a district court must be lenient in its review of a *pro se* filing, the court "cannot act as *de facto* counsel or rewrite an otherwise deficient pleading to sustain an action."  *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citation omitted).

In addition, Rule 201(b) of the Federal Rules of Evidence authorizes a court to take judicial notice of facts that are not "subject to reasonable dispute" because the facts are capable of accurate and ready determination by resort to "sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b)(2).  A district court may take judicial notice of state court records to "recogniz[e] the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

## II.

Before describing the facts in the light most favorable to Mr. Gibbons, the Court first must consider which submissions contain facts that the Court may

consider. For starters, when a plaintiff pursues his claims *pro se*, a district court may "credit the 'specific facts' pled in [the] plaintiff['s] [] sworn complaint when considering his opposition to summary judgment." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (quoting *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Though Mr. Gibbons signed his original complaint, (Doc. 1, p. 5), the Court dismissed that complaint because of pleading deficiencies, (Doc. 14). Mr. Gibbons attached to his original complaint an advertisement for his painting company, (Doc. 1, p. 7), a June 2014 DeKalb County appearance bond that Mr. Gibbons signed, (Doc. 1, p. 8), a July 2014 DeKalb County court order, (Doc. 1, p. 11), and the narrative position of a June 2014 arrest report, (Doc. 1, p. 12). Because there seems to be no dispute regarding the authenticity of the documents Mr. Gibbons attached to his original complaint, the Court will consider those documents.

The Court offered Mr. Gibbons an opportunity to amend his complaint, (Doc. 14, pp. 11-12), and, after two extensions of time, (Docs. 23, 25), Mr. Gibbons filed an amended complaint. At the end of the typed amended complaint, Mr. Gibbons typed "RESPECTFULLY SUBMITTED," his name, his address, and his telephone number, but Mr. Gibbons did not sign the document or state that he provided the facts under penalty of perjury. (Doc. 26, p. 3). Mr. Gibbons attached to his amended complaint a certified copy of a DeKalb County criminal record. (Doc. 26, p. 4).

4

Because Mr. Gibbons did not sign his amended complaint, the Court will not consider the facts he alleged in it, but the Court will consider the attached certified copy of a criminal record.

In response to the City's motion for summary judgment, on October 18, 2024, Mr. Gibbons filed a document that begins with a "Statement of Undisputed Facts in Support of Plaintiff." (Doc. 45, pp. 1–4, 9).[2] At the end of the typed statement of facts, Mr. Gibbons typed "RESPECTFULLY SUBMITTED," his name, his address, and his telephone number, but Mr. Gibbons did not sign the document or state that he provided the facts under penalty of perjury. (Doc. 45, p. 4). Mr. Gibbons attached to his statement of facts a list of his prescription medications. (Doc. 45, pp. 5, 7).

In May 2025, Mr. Gibbons re-filed two pages from his October 2024 statement of facts and attached to those pages a news article, prescription information, and a fire department report. (Doc. 49, pp. 3-8). In August 2025, Mr. Gibbons re-filed much of this information and attached a signed, handwritten note in which he apologized for his delay in submitting the materials to the Court. (Doc. 50). Because Mr. Gibbons signed the handwritten note at the end of his August 2025 re-filed statement of facts, the Court construes the October 2024 statement as a declaration authored by Mr. Gibbons. *See Jacob*, 40 F.4th at 1334.

---

[2] Because Mr. Gibbons is proceeding *pro se*, the Court accepts the date that he mailed his response, (Doc. 45, p. 9), and the filing date rather than the date the Court received his response.

Mr. Gibbons attached to his August 2025 submission copies of various criminal court records including a certificate of analysis reporting the results of a forensic test of pills and arrest reports with associated records from 2014. (Docs. 50-4; Doc., 50-5, pp. 3–10 ). Mr. Gibbons has asked the Court to consider the new information that he included in his August 2025 submission. (Doc. 52). Because the Court may take judicial notice of the state criminal court proceedings, the Court will consider the supplemental records to the extent that they are relevant to events surrounding Mr. Gibbons's 2018 arrest. As the Court explains below, the Court already has dismissed Mr. Gibbons's claims as they pertain to his arrest in 2014.

The City attached to its summary judgment motion an affidavit written by Todd Bowen, a Captain in the Rainsville City Police Department. (Doc. 42-1). That affidavit is properly before the Court.

In addition, for the purposes of determining when judicial acts occurred and the subject matter of criminal cases involving Mr. Gibbons, the Court takes judicial notice of the docket sheets in three state-court criminal cases brought against Mr. Gibbons: DC-2014-001409.00, (Doc. 29-4); DC-2014-001410.00, (Doc. 36-1); and CC-2018-000565.00, (Doc. 36-2). *See Jones*, 29 F.3d at 1553.[3] The Court also takes

---

[3] Case 1409 relates to a methamphetamine trafficking charge. (*See* Doc. 29-4, p. 1). Case 1410 relates to an alcohol possession charge. (*See* Doc. 36-1).

judicial notice of the state-court order dismissing the 2018 criminal case.  (Doc. 13-1, pp. 19–24).

## III.

Viewing this information in the light most favorable to Mr. Gibbons, on June 25, 2014, Officer Bowen, another City of Rainsville police officer, and an Alabama state trooper established a driver's license checkpoint on Marshall Road in Rainsville, Alabama.  (Doc. 45, p. 1; Doc. 42-1, p. 2; Doc. 50, p. 2).  As Mr. Gibbons was driving on Marshall Road, (Doc. 45, p. 1; Doc. 50, p. 2), he saw the checkpoint and turned around because the passenger in his vehicle "had warrants out for his arrest." (*See* Doc. 45, p. 1; *see also* Doc. 42-1, p. 2; Doc. 50, p. 2).

Officer Bowen stopped Mr. Gibbons.  (Doc. 42-1, p. 2; Doc. 45, p. 1).  Other officers arrived, and one officer "noticed some unopen[ed] beer in the truck." (Doc. 45, p. 1).  The officers asked Mr. Gibbons and his friend "to step out of the truck while they conducted a search."  (Doc. 45, p. 1).  During the search, the officers discovered 37 oxycodone pills in an unlabeled bottle.  (Doc. 45, pp. 1–2; Doc. 42-1, p. 2).  Mr. Gibbons had a prescription for oxycodone, (Doc. 45, p. 5), but because he had the pills in an unlabeled bottle, Officer Bowen arrested him for illegal possession of prescription drugs and illegal possession of an alcoholic beverage, (Doc. 42-1, p. 2).  The officers did not read Mr. Gibbons his *Miranda* rights before taking him to jail.  (Doc. 45, p. 2).  The next day, Rainsville police investigator

7

Stephen Dutton interviewed Mr. Gibbons, (Doc. 50-5), and increased the charges against him to "drug trafficking." (Doc. 45, p. 2).

When "the arrest report was entered into the computer, a clerical error occurred, identifying the pills as methamphetamine instead of oxycodone." (Doc. 42-1, p. 3). After Mr. Gibbons's arrest, "the pills were sent to the Alabama Department of Forensic Science for scientific identification of the substance." (Doc. 42-1, p. 3). According to Mr. Gibbons, this 2014 case continued between 2018 and 2021. (Doc. 45, p. 3). The docket sheet for the 2014 drug trafficking case indicates that an August 2018 indictment disposed of the 2014 drug trafficking case. (*See* Doc. 29-4, p. 2). Officer Bowen stated in his affidavit that because the 2014 charge against Mr. Gibbons was a felony charge, "the City of Rainsville did not prosecute the claim against Mr. Gibbons in municipal court." (Doc. 42-1, p. 3).

The Department of Forensic Sciences did not analyze the pills from the 2014 arrest until June of 2018. (Doc. 13-1, p. 19; (Doc. 50-4). On August 7, 2018, a grand jury indicted Mr. Gibbons for trafficking oxycodone. (Doc. 36-2, p. 1; Doc. 13-1, p. 19). In December of 2018, the DeKalb County Sheriff's Department arrested Mr. Gibbons. (Doc. 45, p. 3). According to Officer Bowen, the "City of Rainsville Police Department did not participate in the arrest of Gary Gibbons in 2018, nor in any decision regarding presentation of the case to the grand jury." (Doc.

42-1, p. 3).[4]   The state court dismissed the methamphetamine trafficking charge against Mr. Gibbons on February 26, 2019.  (Doc. 13-1, p. 24).[5]

Mr. Gibbons sued the City on December 22, 2020.  (Doc. 1).[6]  In his amended complaint, Mr. Gibbons asserts claims for false arrest, false imprisonment, abuse of process, and malicious prosecution.  (Doc. 26, p. 3).  Mr. Gibbons alleges that the City, "by acts of its employed law enforcement officers," "twice falsely arrested and imprisoned" him, "intentionally used a specified legal process, a criminal proceeding, primarily for an improper use," and "maliciously commenced a criminal proceeding or prosecution against" him without "probable cause."  (Doc. 26, pp. 1, 3, ¶ 1).  Mr. Gibbons asserts that the officers "were acting at all times pursuant to the policies, customs, and/or practices of Defendant City of Rainsville, Alabama and/or the supervisory agents of its Police Department all of whom authorized, encouraged, directed and or condoned the actions complained of."  (Doc. 26, p. 1, ¶ 2).  Mr. Gibbons requests $1 million in compensatory damages, including for lost

---

[4] In his amended complaint, Mr. Gibbons identifies Officer Dutton as a participant in the 2018 arrest.  (Doc. 26, p. 2, ¶ 7).  According to Officer Bowen, "Officer Dutton left his employment with the City of Rainsville in 2016."  (Doc. 42-1, p. 4).  Mr. Gibbons has not provided evidence that Officer Dutton worked for the City at the time of the 2018 arrest.

[5] Mr. Gibbons states that the state court dismissed the case on December 17, 2021.  (Doc. 45, p. 3).  The dismissal order and the notation on the docket sheet for December 17, 2021 indicate that "this case was supposed to be D/M 2-26-2019."  (Doc. 13-1, p. 24; Doc. 26, p. 4; Doc. 36-2, p. 4).

[6] Mr. Gibbons also sued the Sheriff, but the Court has dismissed Mr. Gibbons's claims against the Sheriff.

9

income and for physical and mental anguish, $2 million in punitive damages, and costs. (Doc. 26, p. 3; *see also* Doc. 50, p. 7).[7]

On March 27, 2023, the Court dismissed Mr. Gibbons's false arrest, false imprisonment, abuse of process, and malicious prosecution claims related to the 2014 arrest because the two-year statute of limitations barred these claims. (Doc. 36, pp. 13–16, 16 n.10). Mr. Gibbons's remaining claims concern his claims against the City for false arrest, false imprisonment, abuse of process, and malicious prosecution stemming from his 2018 indictment and arrest. (*See* Doc. 36, p. 19).[8]

---

[7] In addition, Mr. Gibbons alleges that Officer Dutton "had a personal dislike of the Plaintiff and vendetta against him." (Doc. 26, p. 1, ¶ 3). According to Mr. Gibbons, Officer Dutton "had previously been fired by numerous governing bodies due to wide spread [sic] misconduct including wide spread [sic] violations of the position to improperly punish persons he disliked." (Doc. 26, pp. 1–2, ¶ 3). Officer Dutton allegedly "conspired with others" to falsely accuse Mr. Gibbons of trafficking methamphetamine. (Doc. 26, p. 2, ¶ 4). Mr. Gibbons has not substantiated these allegations in the summary judgment record.

[8] In his response to the City's motion for summary judgment, Mr. Gibbons "petition[ed]" for false arrest, false imprisonment, abuse of process, malicious prosecution, lost wages, "defamation of character," physical and mental anguish, "invasion of privacy," and violations of his Fourth Amendment rights. (Doc. 45, p. 4). As explained in this opinion, the Court will grant the City's motion for summary judgment on Mr. Gibbons's claims for false arrest and false imprisonment stemming from his 2018 arrest, which implicate his Fourth Amendment rights. The Court also will grant the City's motion on Mr. Gibbons's claims for abuse of process and malicious prosecution stemming from his 2018 indictment and arrest. If Mr. Gibbons had succeeded on any of his claims, he could have recovered compensatory damages for lost wages and physical and mental anguish. Defamation and invasion of privacy represent separate causes of action that Mr. Gibbons did not raise in his amended complaint. (*See* Doc. 26). Plaintiffs "may not 'raise new claims at the summary judgment stage.'" *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1337–38 (11th Cir. 2024) (quotation omitted). Accordingly, the Court will not consider Mr. Gibbons's claims for "defamation of character" and "invasion of privacy."

## IV.

Section 1983 subjects municipalities like the City to liability "'only when a "policy or custom" of the municipality inflicts the injury.'" *Baxter v. Roberts*, 54 F.4th 1241, 1270 (11th Cir. 2022) (quoting *Cook ex rel. Est. of Tessler v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1116 (11th Cir. 2005)). A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).[9] To establish the existence of a municipal policy or custom, plaintiffs may point to an official policy; identify "'a widespread practice that, although not authorized by written or express municipal policy, is so permanent and well settled as to constitute a custom or usage with force of law;'" or demonstrate that the municipality "'tacitly authorize[d]' or 'display[ed] deliberate indifference towards' the 'constitutionally offensive actions of its employees.'" *Baxter*, 54 F.4th at 1270 (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001)). For example, the "continued failure of [a] city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under [Section] 1983." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

The City argues that Mr. Gibbons cannot establish the existence of a City policy or custom that inflicted harm on him because the City did not participate in

---

[9] Courts often refer to this theory of liability as vicarious liability or *respondeat superior*.

Mr. Gibbons's 2018 indictment and arrest. (*See* Doc. 43, pp. 7–10). Without the City having participated in these events, Mr. Gibbons cannot hold the City liable under Section 1983. *See Depew*, 787 F.2d at 1499. According to Officer Bowen, the "City of Rainsville Police Department did not participate in the arrest of Gary Gibbons in 2018, nor in any decision regarding presentation of the case to the grand jury." (Doc. 42-1, p. 3).[10] In his responses to the City's motion, Mr. Gibbons indicates that the DeKalb County Sheriff's Department arrested him in 2018. (Doc. 45, p. 3; Doc. 50, p. 5). Mr. Gibbons has not put forth evidence that the City otherwise participated in his 2018 indictment and arrest. The Court has reviewed all of Mr. Gibbons's submissions and has not found evidence from which a jury could infer that the City participated in his 2018 arrest.

Because Mr. Gibbons's has not cited "to particular parts of materials in the record" that demonstrate that the City participated in the 2018 events at issue in this case, Mr. Gibbons has not identified a genuine dispute of material fact that precludes summary judgment. *See* FED. R. CIV. P. 56(c)(1)(A). The Court remains mindful of Mr. Gibbons's circumstances, but in the absence of support for his claims, Mr. Gibbons's lawsuit cannot proceed.

---

[10] As discussed earlier in this opinion, though Mr. Gibbons identifies Officer Dutton as a participant in the 2018 arrest, (Doc. 26, p. 2, ¶ 7), "Officer Dutton left his employment with the City of Rainsville in 2016," (Doc. 42-1, p. 4), and Mr. Gibbons has not provided evidence that Officer Dutton worked for the City at the time of the 2018 arrest.

12

## IV.

Accordingly, the Court grants the City's motion for summary judgment. By separate order, the Court will enter a final judgment in favor of the City.

The Clerk of Court shall please TERM Doc. 42 and mail a copy of this order to Mr. Gibbons at his address on file. The Clerk shall please TERM Docs. 51 and 52 as moot.

**DONE** and **ORDERED** this September 30, 2025.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

13